THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES HOLZMAN, | ) |
| Plaintiff | ) ) ) |
| vs. | ) CAUSE NO. 3:05-CV-316RM ) |
| CITY OF SOUTH BEND, OFFICER BRYAN MILLER, OFFICER CORI BAIR, and OFFICER SCOTT SEVRENS, | ) ) ) ) |
| Defendants | ) ) |

OPINION AND ORDER

James Holzman sues Officers Bryan Miller, Cori Bair, and Scott Sevrens pursuant to 42 U.S.C. § 1983, alleging the defendants violated his rights under the Fourteenth Amendment of the United States Constitution. The defendants move for summary judgment, and for the reasons that follow, their motion is granted in part and denied in part.[1]

The following relevant facts are recited only for purposes of resolving the summary judgment motion and are taken in the light most favorable to Mr. Holzman as legally possible. Many of these facts come from several recorded conversations between the South Bend Police Department dispatch, the responding officers, and Mr. Holzman. The recordings on which both parties rely have been collected on an audio tape and submitted for the court's review.

---

[1] Mr. Holzman also sues the City of South Bend, but his response to summary judgment concedes this claim: "Holzman stipulates and agrees that there is currently insufficient evidence to maintain a viable claim against the City of South Bend as a separate defendant." Summary judgement is granted as to all claims against the City of South Bend.

Mr. Holzman is terminally ill. He suffers from AIDS, fibromyalgia, pancreatitis, degenerative arthritis, neuropathy in his limbs, and during the winter of 2004, he stood 5'5 and weighed 140 pounds. On November 25, 2004, he tried to contact Oregon's assisted suicide hotline but inadvertently reached an Oregon-based private ambulance service. The caller with whom Mr. Holzman spoke contacted the South Bend Police Department regarding Mr. Holzman's inquiries about Oregon's physician-assisted suicide laws.[2] Although the Oregon caller stated that Mr. Holzman had threatened suicide by cop, Mr. Holzman never told anyone he was going to kill himself.[3]

The defendant officers were dispatched to Mr. Holzman's apartment to check on his welfare. While the officers were en route, police dispatch called Mr. Holzman who told dispatch he was alright and was getting ready to do his laundry. He also stated he didn't want to see the police, and if the police came into his apartment he wouldn't hesitate to do a suicide by cop. The dispatcher advised

---

[2] The Oregon caller first contacted the St. Joseph County Sheriff's Department, who then contacted the South Bend Police Department regarding Mr. Holzman.

[3] Officer Miller's sworn statement is that "the nature of the dispatch that I received was to check on the welfare of a party that was contemplating suicide." Nothing in the record, though, indicates that Mr. Holzman was going to kill himself immediately. His deposition testimony is that he told the Portland City police department, whom he first contacted for an assisted suicide number, that he was "not suicidal" and that he was "calling them [ ] to just get information…" He then spoke with an unknown caller at the ambulance service and "started to explain to them the reason why [he] called them." The dispatch recording between the county employee who received the call from Oregon and the South Bend Police Department doesn't mention that Mr. Holzman said he was going to kill himself. Likewise, the recording between dispatch and the responding officers only mentions Mr. Holzman's inquiries into doctor assisted suicide and the threat of "suicide by police." Mr. Holzman also doesn't mention killing himself in his recorded conversation with dispatch.

2

against this course of action, and assured Mr. Holzman several times that the police officers just wanted to check on him to make sure he was alright. The dispatcher promised him that the officers would leave once he presented himself, so he agreed to open door. Mr. Holzman told the dispatcher he would not come out of his apartment, and the dispatcher relayed this message to the responding officers.

When Mr. Holzman opened his door, the officers asked him to step outside his apartment. Mr. Holzman refused. The officers asked him if he was going to hurt himself or if he had any weapons; he denied being suicidal or possessing any weapons. He explained to the officers that his health conditions had prompted his calls about physician-assisted suicide, but that he wasn't going to hurt himself because it was against his religion.

At this point, the parties' factual account of the encounter diverges dramatically. Mr. Holzman says he refused the officers' request to enter, so one of the officers grabbed a cigarette out his mouth.[4] When Mr. Holzman told the officer that he thought that was rude, the officer placed his hand on Mr. Holzman's arm.[5] Mr. Holzman asked the officer to remove his hand, but before he knew it, the officers were in his apartment wrestling him to the ground. As Mr

---

[4]Mr. Holzman can be heard on the police dispatch tape adamantly objecting to something, but it is unclear from the recording whether he is objecting to the officers' entry, or their request for him to come out of his apartment.

[5]It is unclear from Mr. Holzman's deposition testimony whether he believes it was Officer Miller or Officer Sevrens that grabbed the cigarette from his mouth and placed their hand on his arm.

3

Holzman describes it: "I felt four of the officers — or three of the officers, with their hands on me, because two of them had my hands, and one had my leg, and the other one had his knee in my back trying to get me to the ground at the same time having the taser at my back." Mr. Holzman says he didn't resist the officers' attempt to restrain him.

Officer Miller's sworn statement is that he received a dispatch to check on the welfare of a party who was contemplating suicide and had threatened suicide by cop. Upon his arrival at the residence, Mr. Holzman didn't object to him entering the apartment, and that upon entry into the residence, Officer Miller was struck by the number of knives and swords that adorned the walls. He explained to Mr. Holzman that he was going to place him in handcuffs for his safety while the situation could be sorted out. Mr Holzman became irate at this proposition and raised his fist at Officer Miller. Instantaneously, Officer Sevrens deployed his taser, allowing Officer Miller to place Mr. Holzman in handcuffs. Officers Miller says neither he nor Officer Bair used any force whatsoever in restraining Mr. Holzman.

Mr. Holzman's complaint alleges the officers unlawfully entered his apartment and used excessive force in violation of the Fourth Amendment.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding

4

whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the non-movant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events") (quoting Schacht v. Wisconsin Dep't of Corr.,175 F.3d 497, 504 (7th Cir. 1999)).

## UNLAWFUL ENTRY

The officers contend they are entitled to qualified immunity on Mr. Holzman's claim of unlawful entry. Saucier v. Katz, 533 U.S. 194, 201 (2001) (qualified immunity is immunity from suit rather than a mere defense to liability and so should be determined at the earliest possible stage in the litigation). To

5

determine whether the officers are entitled a qualified immunity, the court engages in a two step analysis. The court must first decide whether the facts, when viewed in the light most favorable to Mr. Holzman, indicate that the officers' conduct violated some constitutional right of his. Saucier v. Katz, 533 U.S. at 201. If so, the court must determine whether the constitutional right violated was clearly established at the time of the alleged violation. Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id at 202. Officers Miller, Bair, and Sevrens will enjoy a qualified immunity unless the court answers both questions affirmatively. Id at 201.

"A warrantless entry into a private home constitutes a search and presumptively is unreasonable under the Fourth Amendment." Leaf v. Shelnutt, 400 F.3d 1070, 1081 (7th Cir. 2005) (citing United States v. Rivera, 248 F.3d 677, 680 (7th Cir. 2001)). A warrantless entry is allowed "when police have a reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant." Id (quoting United States v. Lenoir, 318 F.3d 725, 730 (7th Cir. 2003)). A warrantless entry is permitted based on exigent circumstances "when the police 'reasonably fear[ ] for the safety of someone inside the premises.' " Id (quoting United States v. Richardson, 208 F.3d 626, 629 (7th Cir. 2002). To determine whether exigent circumstances existed, the court must "analyze the situation from the perspective of the officers at the scene" and ask whether the officers had "an objectively reasonable belief that exigent

6

circumstances existed." United States v. Marshall, 157 F.3d 477, 482 (7th Cir. 1998).

The officers say there were exigent circumstances permitting a warrantless entry into Mr. Holzman's apartment since they were told by dispatch that Mr. Holzman was "contemplating suicide" and had made a specific threat of suicide by cop. The court agrees the officers had an reasonable belief that Mr. Holzman's safety was in danger upon arriving at the apartment complex, but Mr. Holzman's direct statements to the contrary about his intentions significantly undermine the reasonableness of their belief at the time they entered the apartment. Mr. Holzman says he told the officers he was terminally sick and was inquiring about doctor assisted suicide in Oregon, and that he "was not going to hurt [himself], had no intentions of it," that "it [suicide] was against his religion." Mr. Holzman's version of the of the events, if believed, show the officers' entry violated Mr. Holzman's constitutional right to be free from unreasonable searches.

Still, the court cannot say the unlawfulness of the officers' actions was apparent in the situation they confronted. *See* Saucier v. Katz, 533 U.S. at 206 ("Yet, even if a court were to hold that [an] officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, Anderson still operates to grant officers immunity for reasonable mistakes as to the legality of their actions."). Officer Miller says the officers believed Mr. Holzman to be suicidal so they entered his apartment for the purpose of determining whether he was going to take his own life or the lives of others. The officers were placed in the difficult

7

position of being told by their dispatcher that Mr. Holzman was "contemplating suicide," versus believing his statements that he had no intention of hurting himself. The doctrine of qualified immunity allows officers the ability to make such difficult decisions as part of effectively performing their duties. *See* Anderson v. Creighton, 483 U.S. 635, 638-639 (1987).  Even under Mr. Holzman's version of the events, a reasonable officer could have believed a warrantless search in this situation to be lawful in light of clearly established law and the information the responding officers possessed, so the defendant officers are entitled a qualified immunity on the claim of unlawful entry, and summary judgment is granted. *See* id at 641.

## EXCESSIVE FORCE

The officers say they are entitled a qualified immunity on Mr. Holzman's claim they used excessive force in violation of the Fourth Amendment. The court cannot agree. The record consists of conflicting versions of the events surrounding Mr. Holzman's encounter with the officers. Mr. Holzman says he wasn't confrontational, that the officers forcefully wrestled him to the ground without provocation, that he didn't fight back while he was being taken down, and that he was being restrained by several officers when he was tasered.  The officers say the amount of force used was justified because they needed to place Mr. Holzman in handcuffs given his threats of suicide, his illness, and the availability of weapons in the dwelling. Mr. Holzman's version of the events, if believed, would suffice to

8

prove that his right to be free from excessive force has been violated. His testimony also provides a factual account, again if believed, that would render the officers' conduct unreasonable, so a genuine issue of material fact exists, and a finding at this point that officers enjoy a qualified immunity as to the claim of excessive force is improper. Morfin v. City of East Chicago, 349 F.3d 989, 1000 (7th Cir. 2003).

The defendants also say the claim that Officer Sevrens used excessive force fails as a matter of law because the amount of force used is what a reasonable officer would have used in the situation. The court cannot agree. Again, Mr. Holzman's version of what happened is diametrically opposed from Officer Miller's version, and the issues of material fact surrounding the encounter preclude granting summary judgment on the claim of excessive force. *See* Abdullahi v. City of Madison 423 F.3d 763, 773 (7th Cir. 2005) ("[T]he Graham reasonableness inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." (citing Santos v. Gates, 287 F.3d 846, 853 (9th Cir.2002))).

Officers Miller and Bair say Mr. Holzman's excessive force claim against them fails as a matter of law because the undisputed evidence shows they weren't personally involved in the alleged wrongdoing. The court cannot agree. Mr. Holzman's deposition testimony is that "[t]he next thing [he knew], two or three of them [the officers] are wrestling [him] to the ground . . ." and that "[he] felt four

9

of the officers — or three of the officers, with their hands on [him], because two of them had [his] hands, and one had [his] leg, and the other one had his knee in [his] back trying to get [him] to the ground at the same time having the taser at [his] back." A rational trier of fact could reasonably conclude the force these officers used against Mr. Holzman was excessive. As such, the officers motion for summary judgment on the claim of excessive force is denied.

## FAILURE TO INTERVENE

Officers Miller and Bair claim qualified immunity to the extent Mr. Holzman says they failed to intervene to prevent Officer Sevrens from using unreasonable force in violation of the Fourth Amendment. *See* Abdullahi v. City of Madison, 423 F.3d at 774. "An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." Id (quoting Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994)). Mr. Holzman's factual account would constitute a violation of a valid constitutional right, and because the nature of Officer Sevrens's conduct remains uncertain, "one can only speculate as to how visually obvious any violation of [Mr. Holtzman's] right might have been." Abdullahi v. City of Madison, 423 F.3d at 775.

As such, the court cannot say Officers Miller and Bair are entitled to the defense of qualified immunity. Id.

The issues of material fact surrounding this encounter also preclude granting summary judgment on Mr. Holzman's claim Officers Miller and Bair failed to intervened. A "realistic opportunity to intervene" may exist whenever an officer could have "called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop." Abdullahi v. City of Madison, 423 F.3d at 774. This analysis almost always implicates questions of fact for the jury: "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." Id (quoting Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 478 (7th Cir.1997). At this point, the court cannot say, in light of the conflicting versions of the encounter, that a reasonable jury could not conclude Officer Miller and Bair did have time to intervene. Id. Depending on how the jury evaluates the evidence of the officers' conduct, it could conclude consistent with evidence, that either Officer Miller or Officer Bair could and should have attempted to prevent Mr. Holzman's alleged injuries.

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART the defendants' motion for summary judgment [Doc. No. 25]. The motion is GRANTED with respect to all claims against the City of South Bend and the claim

11

of unlawful entry against Officers Miller, Bair, and Sevrens. The motion is DENIED with respect to all remaining claims.

    SO ORDERED.

    Entered:  September 25, 2006

                          /s/ Robert L. Miller, Jr.
                          Chief Judge
                          United States District Court

cc: counsel of record